UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re )
 ) Case No. _____
 )
 ) **Notice of Postconfirmation**
 ) **Amendment of Plan**
 )
Debtor(s) )

The proponent, who is _____, [i.e., debtor; trustee; or creditor (also state type of claim and any business name)] and whose name and address are: _____
by and through the undersigned certifies that:

1. An amended plan dated _____ was attached to this notice and filed with the clerk.

2. The confirmed plan (docket # _____) remains in full force and effect unless the amended plan becomes the plan.

3. The trustee's name and address are: _____
   _____.

4. If proponent is the debtor, check one of the following two options:

   Attached, and verified as true and correct, are updated versions of Schedules A/B (including present amount of any secured debt on property), Schedules I and J, and a copy of the latest real property tax assessment statement; or

   The trustee has waived the requirement of updated Schedules A/B, I and J, and a copy of the latest real property tax assessment. Debtor will provide those documents promptly upon request by any interested party or the court.

5. Prior to filing this plan with the clerk, a separate summary of the amendments, the plan, all schedules and statements required by paragraph 4 above, and any other pertinent information were served on the trustee who: (a) approved the plan, either affirmatively or by failure to notify proponent of an objection within 14 days of the date the plan was served, or (b) requested amendments which were unacceptable to the proponent.

6. On _____ this notice and the amended plan described above were served on the debtor(s); any debtor's attorney; trustee; U.S. Trustee; and all creditors (or if original time to file claims has expired, only on creditors who filed claims).

Date: _____ _____
 Signature, Relation to Proponent, and Contact Phone #

 _____
 (If debtor is proponent) Debtor's Taxpayer ID#(s) (last 4 digits)

**1355.10 (12/1/2018)** Page 1 of 2

**NOTICE IS GIVEN THAT** the amended plan described above will become the plan, pursuant to 11 U.S.C. § 1329(b) if a chapter 13 case or 11 U.S.C. § 1229(b) if a chapter 12 case, unless within 21 days of the service date in paragraph 6 above, the trustee or other interested party:

(1) files a written objection, setting forth the specific grounds for the objection, with the clerk at 1050 S.W. 6th Ave. #700, Portland OR 97204 or 405 E 8th Ave. #2600, Eugene OR 97401; and

(2) serves the objection on the proponent and the trustee named in paragraph 3 above. The terms of the previously entered confirmation order continue to apply except to the extent such terms are inconsistent with the amended plan.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re

Debtor(s)

Case No. _____
Amended

**CHAPTER 12 PLAN DATED** _____

Motion to Value Collateral

Secured Claim Amount Limited with Creditor Consent

1. The debtor shall pay to the trustee (a) a periodic payment of $ _____ every _____ (insert either month, quarter, six months or year); (b) all proceeds from avoided transfers, including proceeds from transfers avoided by the trustee; (c) upon receipt by the debtor, all net tax refunds attributable to prepetition tax years and net tax refunds attributable to postpetition tax years (i.e., tax refunds not included on Schedule I, less tax paid by debtor for a deficiency shown on any tax return for that same postpetition tax year or tax paid by setoff by a tax agency for a postpetition tax year) received by the debtor during:       The life of the plan, or       36 months from the date the first plan payment is due (*check applicable provision; if neither is checked, "for the life of the plan" applies*); (d) a lump sum payment of $_____ on _____(date); and (e) _____ _____.

2. From the payments so received, the trustee shall make disbursements as follows:
   (a) First, to the trustee's commission and expenses.
   (b) Second, with respect to secured creditors, the terms of the debtor's prepetition agreement with each secured creditor shall continue to apply, except as otherwise provided for in this plan or the confirmation order. Secured creditors shall retain their liens until the payment of the underlying debt, determined under nonbankruptcy law, or discharge under § 1228, as appropriate. Any allowed secured claims will be paid as shown below. Should the trustee not have sufficient funds in trust to pay fully the disbursements listed below, disbursements of funds available shall be made pro rata. If a creditor is not fully secured, the unsecured portion of the creditor's claim shall be treated under the provisions of pt. 2(e) and (f) if the claim identifies the priority portion of the claim, and, if not, under the provisions of pt. 2(f) only. The following also apply:
   (1) To creditors whose claims have been timely filed and allowed as secured, make payments as follows: Estimated prepetition arrearages on property must be shown below, separately, and identified as such if debtor is curing defaults under 11 U.S.C. § 1222(b)(5)). **The arrearages and total amount of debt shown in a timely filed and allowed secured claim shall control**.

| Creditor | Collateral | Estimated Arrearage, if Curing | Collateral Value if Not Paying in Full | Estimated Total Debt if Paying in Full | Terms of Payments | Post-confirmation Interest Rate | Periodic Payment |
|---|---|---|---|---|---|---|---|

**1200.05 (07/06/2020)**          Page 1 of 4

**In re Eric L. Silva**
**Case No. 19-34037-pcm12**
**Amended Chapter 12 Plan Dated October 13, 2020**

**Chapter 12 Plan Continuation Statement for Paragraph 1**

In Paragraph 1 of the Plan, the provision for periodic payments shall read:

| Plan Month(s): | Corresponding Calendar Month: | Payment Amount: |
|---|---|---|
| 1: | February 2020 | $120,000 |
| 2: | March 2020 | $42,500 |
| 3: | April 2020 | $0.00* |
| 4: | May 2020 | $22,500* |
| 5: | June 2020 | $0.00* |
| 6: | July 2020 | $42,000* |
| 7-30: | August 2020 through July 2022 | $42,500 |
| 31-48: | August 2022 through January 2024 | $52,500 |
| 49-60: | February 2024 through January 2025 | $62,500 |

* All arrearages for the missed or partial payments in Months 3 through 6 shall be paid at the end of the Plan, as part of the Debtor's lump-sum payment due on or before month 60. Any default under the Plan or Order Confirming Chapter 12 Plan and Resolving Motions [ECF No. 160] (the "***Confirmation Order***") shall be deemed cured as the effective date of this Amended Chapter 12 Plan dated October 13, 2020.

Page 1 of 8 – Plan Continuation Statements    In re: Eric L. Silva
Amended Chapter 12 Plan Dated October 13, 2020    Case No. 19-34037-pcm12
{00330435:10}

Case 19-34037-pcm12    Doc 189    Filed 10/13/20

**Chapter 12 Plan Continuation Statement for Paragraph 2(b)(1)**

| Creditor / Class | Collateral | Estimated Arrearage, if Curing | Collateral Value, if Not Paying in Full | Estimated Total Debt if Paying in Full | Term of Payments (Up to) | Post-Confirmation Interest Rate | Periodic Payment |
|---|---|---|---|---|---|---|---|
| Tillamook County Assessment and Taxation CLASS 1(a) | 26755 Blankenship Rd. Beaver, OR Tax Acct# 211513 | N/A | N/A | $22,914.34 | 12 Mo. | 16% per annum | $2,235.00 per month |
| Tillamook County Assessment and Taxation CLASS 1(b) | 23220 Blaine Cty Rd. Beaver, OR Tax Acct# 198413 | N/A | N/A | $0.00 | 12 Mo. | 16% per annum | $0.00 – paid in full from sale of property |
| Tillamook County Assessment and Taxation CLASS 1(c) | Bell Property Beaver, OR Tax Acct# 202685 | N/A | N/A | $31.04 | 1 Mo. | 16% per annum | $31.04, plus interest to payment date |
| Tillamook County Assessment and Taxation CLASS 1(d) | Bell Property Beaver, OR Tax Acct# 211256 | N/A | N/A | $667.91 | 12 Mo. | 16% per annum | $66.00 per month |
| Tillamook County Assessment and Taxation CLASS 1(e) | Bell Property Beaver, OR Tax Acct# 319435 | N/A | N/A | $6,235.68 | 12 Mo. | 16% per annum | $609.00 per month |
| Tillamook County Assessment and Taxation CLASS 1(f) | Bell Property Beaver, OR Tax Acct# 321380 | N/A | N/A | $239.74 | 1 Mo. | 16% per annum | $239.74, plus interest to payment date |
| Tillamook County Assessment and Taxation CLASS 1(g) | Bell Proeprty Beaver, OR Tax Acct# 353646 | N/A | N/A | $225.97 | 1 Mo. | 16% per annum | $225.97 plus interest to payment date |
| Purina Animal Nutrition LLC CLASS 2(a) | Debtor's Cattle; Milk Assignment | N/A | N/A | $69,032.11 | 28 Mo. | 6.5% per annum | $1,600 per month, plus AAFAAC* |
| Veterinarian Svcs of Oregon CLASS 2(b) | Debtor's Cattle | N/A | N/A | $42,001.84 | 28 Mo. | 6.5% per annum | $250 per month, plus AAFAAC* |
| Fairview Trucking CLASS 2(c) | Debtor's Cattle | N/A | N/A | $277,369.00 | 28 Mo. | 6.5% per annum | $6,250 per month, plus AAFAAC* |

Page 2 of 8 – Plan Continuation Statements
Amended Chapter 12 Plan Dated October 13, 2020
{00330435:10}

In re: Eric L. Silva
Case No. 19-34037-pcm12

Case 19-34037-pcm12    Doc 189    Filed 10/13/20

| Creditor / Class | Collateral | Estimated Arrearage, if Curing | Collateral Value, if Not Paying in Full | Estimated Total Debt if Paying in Full | Term of Payments (Up to) | Post-Confirmation Interest Rate | Periodic Payment |
|---|---|---|---|---|---|---|---|
| KeyBank, N.A. CLASS 3 | All Personal Property and Cattle; Real Property at 26755 Blankenship Road, Beaver, OR; Real Property at 23220 Blaine Rd., OR | N/A | N/A | $1,536,505.74 | 60 Mo. | 6.5% per annum | **As set forth in Paragraph 11 and Exhibit 1.** |
| CHS, Inc. CLASS 4 | CHS Patronage Equity | N/A | N/A | $8,872.85 | 60 Mo. | 5.75% per annum | $200.00 per month |
| Kubota Credit Corp. CLASS 5 | Kubota MX4700F 2WD Tractor Serial No. 11658 | N/A | N/A | $4,301.24 | 60 Mo. | 0% | $80.00 per month |
| Kubota Credit Corp. CLASS 6 | Kubota RTV500-A Serial No. 45741 | N/A | N/A | $4,933.98 | 60 Mo. | 0% | $86.00 per month |
| Kubota Credit Corp. CLASS 7 | Kubota SSV75HRC Serial No. 10511 | N/A | N/A | $27,541.66 | 60 Mo. | 0% | $475.00 per month |
| Kubota Credit Corp. CLASS 8 | Kubota M126GXDTC-F; Serial No. 51447 | N/A | N/A | $36,293.12 | 60 Mo. | 0% | $626.00 per month |
| Diversified Financial CLASS 9 | Irrigation Equipment | N/A | N/A | $27,979.87 | 60 Mo. | 4.65% per annum | $528.00 per month |
| DLL Finance LLC CLASS 10 | Heatime Collars | N/A | N/A | $27,870.13 | 60 Mo. | 5.37% per annum | $532.00 per month |
| John Deere CLASS 11 | Cab Tractor, Auger Mixer, Farm Loader, 200 Gallon Sprayer, Fertilizer Spreader | N/A | N/A | $101,325.87 | 60 Mo. | 5.7% per annum | $1,945.00 per month |
| Farm Credit Services of America CLASS 12 | Great Plains 1300F-2175 Drill, Serial No. GP-CC2377 | N/A | N/A | $6,138.46 | 60 Mo. | 5.75% per annum | $270.00 per month |

Page 3 of 8 – Plan Continuation Statements
Amended Chapter 12 Plan Dated October 13, 2020
{00330435:10}

In re: Eric L. Silva
Case No. 19-34037-pcm12

Case 19-34037-pcm12    Doc 189    Filed 10/13/20

| Creditor / Class | Collateral | Estimated Arrearage, if Curing | Collateral Value, if Not Paying in Full | Estimated Total Debt if Paying in Full | Term of Payments (Up to) | Post-Confirmation Interest Rate | Periodic Payment |
|---|---|---|---|---|---|---|---|
| JP Morgan Chase CLASS 13 | 2006 Dodge RAM | N/A | N/A | $9,229.78 | 60 Mo. | 4.24% per annum | $175.00 per month |
| Estate of Marian Bell CLASS 14 (Payment described in this section to cure arrearage only; remainder of claim paid direct – See ¶ 4) | Real Property (the "Bell Property") 28780 Blaine Rd Beaver, OR 97108 | $21,776 | N/A | N/A | 1 Mo. | 0.00% | $10,000 x 1; $500 per month thereafter |
| Carrington Mortg. Svcs, LLC CLASS 15 (Payment described in this section to cure arrearage only; remainder of claim paid direct – See ¶ 4) | Real Property 19940 Blaine Rd Beaver, OR 97108 | $63.44 | N/A | N/A | 1 Mo. | 0.00% | $63.44 per month |
| Paula Wolf CLASS 16 (Payment to cure arrearage and pay administrative claim; remainder of claim paid direct – See ¶ 4) | Cattle; Real Property; | $30,000 | N/A | N/A | 10 Mo. | 3.00% | $21,000 x 1; $1,000 per month thereafter |

\* "AAFAAC" means: all available funds after administrative claims are paid in full, including attorney fees and other § 503(b) claims, but excluding § 503(b)(9) claims that are also secured and treated in Paragraph 2(b) of the Plan.

Page 4 of 8 – Plan Continuation Statements
Amended Chapter 12 Plan Dated October 13, 2020
{00330435:10}

In re: Eric L. Silva
Case No. 19-34037-pcm12

Case 19-34037-pcm12    Doc 189    Filed 10/13/20

If payments to a creditor are to begin after debtor's attorney has been paid, the payments to said attorney shall not exceed $_____ before the creditor is paid. If the debtor is not paying the debt in full, the debtor MOVES the court for an order fixing the value of the collateral as set forth above.

If the collateral is not to be sold, the value of the collateral shall be fixed in the amount stated above for purposes of administration of this plan as well as for purposes of the amount of any secured claim, if under secured, unless objected to at or before the first date set for the confirmation hearing on this plan or, if applicable, prior to expiration of time to object to this proposed modified plan, in which case the value will be determined by the court. If the collateral is to be sold the value shall be the sales price. The debtor MOVES the court for an order so fixing the value of the collateral. Otherwise, the creditor's proof of claim shall control.

(2) Debtor proposes that the creditor(s) specifically identified below agree to the following treatment which the court might not be able to approve absent consent of creditor(s). **Failure of creditor(s) to file a written objection to this plan prior to confirmation shall constitute acceptance of the plan**. From the payments received pursuant to pt. 1, if a claim has been timely filed and allowed as secured, make payments to the following holders of such claims as detailed below. Estimated prepetition arrearages, if curing and reinstating, must be shown below. **The arrearages shown in a timely filed and allowed secured claim shall control.**

| Creditor | Collateral | Estimated Arrearage, if Curing | Collateral Value if Not Paying in Full | Estimated Total Debt if Paying in Full | Terms of Payments | Post-confirmation Interest Rate | Periodic Payment |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

If the collateral is not to be sold, for purposes of administration of this plan and case, the secured claim shall be limited to the value of the collateral stated above, unless creditor(s) objects at or before the first date set for the confirmation hearing on this plan or, if applicable, prior to expiration of time to object to any proposed modified plan, in which case, the values will be determined by the court. If the collateral is to be sold, the value shall be the sales price. The debtor MOVES the court for an order so fixing the value of the collateral.

(3) Adequate protection payments shall be disbursed by the trustee pre-confirmation from funds on hand with the trustee in the payment amounts specified in the plan for the subject secured creditors, absent a provision in this plan or a court order providing for a different amount to be paid preconfirmation. If the debtor fails to make monthly payments sufficient to pay the adequate protection payments in full, the trustee will disburse available funds pro rata according to the payments proposed for subject secured creditors. Adequate protection payments paid through the trustee preconfirmation will be deducted from the amount of the allowed claim. Unless the concerned secured creditor is fully secured or oversecured, no interest shall be paid from the date of the filing of the petition to the date of

confirmation unless otherwise specifically provided for in the payment provisions set forth above.

    (4) The debtor shall surrender any collateral which is not otherwise addressed by the terms of this plan no later than upon confirmation of this plan to the following creditors (state creditor NAME and DESCRIBE collateral to be surrendered):

(c) Third, pro rata, until fully paid, allowed unsecured domestic support obligations.

(d) Fourth, allowed administrative expenses under § 507(a)(2).

(e) Fifth, pro rata, until fully paid, to allowed priority claims in the order stated in § 507(a)(3)-(10), unless otherwise ordered.

(f) Sixth, pro rata, to timely filed and allowed nonpriority unsecured claims, the amounts required by § 1225(b)(1). These monies will be distributed in the method indicated in the applicable section marked below. The terms of pt. 8 shall also apply.

    (1) The creditors will receive approximately _____% of their claims. This percentage will vary depending on the amount of total creditors' claims filed.

    (2) The creditors will receive a minimum _____% of their claims. This percentage will not be reduced despite the amount of total creditors' claims filed.

(g) Pursuant to § 1225(a)(4), the unsecured creditors as a group will receive     100%    a minimum of $_____ (*check applicable provision; if neither is checked, "100%" controls*) plus _____% shall be paid on all timely filed and allowed priority and nonpriority unsecured claims from the date of plan confirmation to compensate for deferred payment.

3. The debtor moves for assumption of the following executory contracts and leases:

    Creditor        Amount of Default [State if None]        Cure Provisions

Those executory contracts or leases not specifically mentioned above are treated as rejected. Any timely filed and allowed claim arising from rejection shall be treated under pt. 2(f). The debtor will pay all assumed executory contracts and leases directly, including amounts required to cure. The debtor shall surrender any property covered by rejected executory contracts or leases to the affected creditor no later than upon confirmation of this plan.

4. The debtor shall pay directly to each of the following creditors, whose debts are fully secured, the regular payment due postpetition on these claims in accordance with the terms of their respective contracts, list any prepetition arrearages in pt. 2(b), and/or specify any other treatment of such

secured creditor(s) in pt. 2(b):

5. The property described below is to be sold [also state offering price and whether it will be offered through a broker (and if so, who), and state date by which it will be sold and what will occur if it is not timely sold], all offers received by the debtor shall be promptly communicated to the trustee and lienholders, and no sale of such property shall be completed without notice to lienholders and the trustee and an opportunity for a hearing:

6. Subject to the provisions of § 502, untimely claims are disallowed, without the need for formal objection, unless allowed by court order.

7. Except as provided in this plan or in the order confirming the plan, upon confirmation of this plan all of the property of the estate shall vest in the debtor(s) free and clear of any claim or interest of any creditor provided for by this plan pursuant to 11 U.S.C. § 1227.

8. [To be completed if plan will not be completed until more than 36 months after the first plan payment due under the originally filed plan.] The scheduled month and year the plan will be completed is _____ and the cause for a plan longer than 36 months is: _____.
Except as otherwise explicitly provided by pt. _____, the debtor shall make plan payments for the longer of either: (a) 36 months from the date the first payment is due under the original plan, unless the debtor pays 100% of all claims with interest if required, or (b) the time necessary to complete required payments to creditors.

9. This plan may be altered postconfirmation in a non-material manner by court order after notice to the debtor, the trustee, any creditor whose claim is the subject of the modification, and any interested party who has requested special notice.

10. Except as otherwise provided herein, (a) postpetition interest on all unsecured claims is disallowed, and (b) unsecured claims allowed in the amount of $25 or less, to the extent claims of that class are entitled to a distribution under this plan, shall be paid in the full amount allowed prior to any payments to other unsecured claims of the same class.

_____  _____  _____  _____
Debtor                         Date        Debtor                         Date

# Chapter 12 Plan Continuation Statement for <u>Paragraph 4</u>

The debtor shall pay directly to each of the following creditors, whose debts are fully secured, the regular payment due post-petition on these claims in accordance with the terms of their respective contracts, list any prepetition arrearages in pt. 2(b), and/or specify any other treatment of such secured creditor(s) in pt. 2(b):

1. <u>Paula Wolf</u>: Debtor shall make regular payments of $5,545.98 through milk check assignment;

2. <u>Paula Wolf</u>: Debtor shall make payments directly to the following creditor to satisfy ongoing indemnity obligations set forth in Debtor's divorce judgment:
    a. HAPO Credit Union for a business trailer acquired from Paula Wolf, which is still titled in Paula Wolf's name.  Upon full payment of the HAPO Credit Union loan, Paula Wolf shall transfer clear title to the trailer to the Debtor; and
    b. Key Bank N.A. (Claim 13-1) for a business credit card.
    Debtor may partially or fully prepay either or both of these debts at any time, to fully satisfy his indemnity obligations with respect to these two debts.  Debtor must make such payments through automatic, recurring scheduled transactions (if such transactions are available) and, within forty-five (45) days of the effective date of this Amended Chapter 12 Plan.

3. <u>Kevin Smith & Greg Brown</u>, for Estate of Marian Bell: regular ongoing payments to resume postconfirmation through milk check assignment.  Arrearage payments described in Paragraph 2(b)(1) of the Plan shall be paid by the Trustee;

4. <u>Carrington Mortgage Svcs., LLC</u>: regular payments to be paid direct by Debtor;

5. <u>Tillamook County Creamery Assoc.</u>: regular payments shall be made to TCCA through the monthly milk check, and TCCA is authorized to deduct $2,700 for funds improperly and inadvertently paid by TCCA to Boverman & Assoc. just prior to the petition.

6. <u>ASL Claimants</u> (Classes 2A, 2B and 2C): After confirmation of the Chapter 12 Plan dated February 11, 2020, Debtor paid the Class 2 claims directly their pro-rata share of proceeds from pre-confirmation cattle sales that occurred after entry of the Final Order Authorizing Use of Cash Collateral of Debtor-In-Possession and Granting Adequate Protection [ECF No. 74]. Claimants will continue to have a replacement lien on all new cattle. All payments to the ASL Claimants shall be made as set forth in the Continuation Statement to Paragraph 2(b)(1). ASL Claimants shall continue to receive reports of cattle sales post-confirmation.  Debtor shall be entitled to sell cattle in the ordinary course of his business, and shall be entitled to use such proceeds for business operations, provided that the Debtor's herd is the same or larger than it was at the time of confirmation (the "**Baseline Herd Size**").  In the event sales of cattle cause the headcount of Debtor's herd to fall below the Baseline Herd Size, Debtor shall segregate such cattle sale proceeds, and such proceeds shall be paid to the ASL Claimants pro-rata, within 20 days after such sale(s). All other payments to the ASL Claimants shall be made as set forth in Paragraph 2(b)(1) and the Continuation Statement to Paragraph 2(b)(1).

Page 5 of 8 – Plan Continuation Statements  
Amended Chapter 12 Plan Dated October 13, 2020  
{00330435:10}

In re: Eric L. Silva  
Case No. 19-34037-pcm12

Case 19-34037-pcm12    Doc 189    Filed 10/13/20

# Additional Paragraphs / Continuation Statements to
# Amended Chapter 12 Plan Dated October 13, 2020

11. Detailed Treatment of KeyBank, N.A.'s Secured Claim (to supplement Paragraph 2(b)(a)):

- Within 30 days following the effective date of this Amended Chapter 12 Plan dated October 13, 2020, KeyBank and Debtor shall calculate the amount owing under the Debtor's five existing promissory notes, including interest, fees and costs allowed under 11 U.S.C. § 506(b), and the parties shall execute appropriate documents substantially in the form attached hereto as **Exhibit 1**, to amend, restate and consolidate such notes and related loan documents (except for credit card accounts and legal fees and costs) into one loan obligation.

- Starting immediately after the effective date of this Amended Chapter 12 Plan, the debtor will provide KeyBank with the following financial information and information related to the operation of his business: (1) quarterly financial statements (profit and loss statement, balance sheet) due 20 days after each calendar quarter; (2) annual financial statements due 30 days after the end of each fiscal year; and (3) the debtor's tax return and all accompanying schedules due 10 days after filing; (4) notice of any default in any scheduled payments to creditors under the plan due within 10 days following such default; and (5) copies of any complaint, demand, notice of default, notice of claim or similar documents received by the debtor within 10 days following receipt thereof. Debtor shall provide this same information, within the same deadlines stated herein, to Paula Wolf.

- The debtor will: (1) pay and discharge all federal, state, local taxes before they become delinquent; (2) maintain insurance on KeyBank's collateral for the full insurable value thereof with KeyBank named as loss payee and additional insured; and (3) allow KeyBank access to the debtor's premises with reasonable notice to inspect KeyBank's collateral and examine the debtor's books and records.

- The debtor will not: (1) create, incur or assume any new material obligations or indebtedness not directly connected to his dairy business and disclosed in the budget and projections submitted in connection with confirmation of the plan; (2) create or suffer to exist any lien upon his properties or assets, except those arising in the ordinary course of business or by operation of law; and (3) sell, convey, transfer or otherwise dispose of any of KeyBank's collateral without KeyBank's written consent, except as specifically permitted by the plan or as may arise in the ordinary course of business.

- All collateral securing the Debtor's existing promissory notes to KeyBank will secure the new amended and restated promissory note with the same validity and priority that they secure the existing notes.

- The Debtor will promptly execute such instruments and documents as KeyBank may reasonably request from time to time, including but not limited to modifications of mortgage and memoranda of modifications of mortgage, as may be necessary or appropriate to evidence the modification and restructure of the debtor's loan documents under the plan.

Page 6 of 8 – Plan Continuation Statements                      In re: Eric L. Silva
Amended Chapter 12 Plan Dated October 13, 2020                  Case No. 19-34037-pcm12
{00330435:10}

Case 19-34037-pcm12    Doc 189    Filed 10/13/20

12. The effectiveness of this Amended Plan dated October 13, 2020 shall not preclude the assertion by Debtor against any creditor of any and all objections to claims, nor the raising by Debtor of offsets, counterclaims or recoupment against any creditor.

13. Claims Within Section 503(b)(9): a) Claim 28 of Purina Animal Nutrition LLC is duplicative of a portion of Claim 27, filed by the same creditor. Claim 27 shall be paid as set forth in Section 2(b)(1). Claim 28 shall not be paid separately from the payments made for Claim 27, and shall be fully satisfied by Debtor's payment of Claim 27; and b) the administrative portion of Claim No. 26 shall be paid as a secured claim as set forth in Section 2(b)(1).

14. On or before month 48, Debtor shall refinance the Dairy Property at 26755 Blankenship Road, Beaver, OR, to pay Key Bank in full, and to contribute additional funds to the plan as may be needed to ensure that allowed priority and unsecured claims are paid in full by the 60th month of the Plan. If Debtor has not refinanced by month 48, Debtor shall list the Dairy Property for sale, and will sell the property before month 60.

15. Notwithstanding any provision in this Plan to the contrary, Debtor shall be entitled to retain all dividend/debenture payments paid by Tillamook County Creamery Assoc., and use such funds for Debtor's business operations.

16. Notwithstanding any provision in this Plan to the contrary, Debtor shall be entitled to retain any government assistance payments received from any government agency related to or designed to alleviate the effects of COVID-19. Debtor shall be entitled to use any funds received for business operations.

17. Prior to entry of the Confirmation Order, Debtor reached a settlement agreement with Boverman & Associates, LLC ("**Boverman**"), regarding Debtor's Objection to Claim No. 29-1, on the following terms:

- Boverman's claim was allowed as a priority claim under 11 U.S.C. § 503(b)(3)(E), in the amount of $137,500;

- KeyBank N.A. paid Boverman the sum of $65,000, and such payment was credited to reduce Boverman's allowed claim by the same amount. The amount paid by KeyBank shall be part of the KeyBank Amended and Restated Promissory Note described in Paragraph 11 above;

- Boverman's remaining priority claim of $72,500 shall be paid in full on or before April 30, 2021;

- Upon entry of the Confirmation Order, Boverman on the one hand, and Debtor and Key Bank on the other hand, released and forever discharged each other, and all of their respective employees, agents, officers, owners, members, shareholders, attorneys, insurers, successors, and assigns, from any and all claims, demands, causes of action, damages, injury, expenses, or liabilities of any kind or nature whatsoever

Page 7 of 8 – Plan Continuation Statements　　　　　　　　　　　　　In re: Eric L. Silva
Amended Chapter 12 Plan Dated October 13, 2020　　　　　　　　　Case No. 19-34037-pcm12
{00330435:10}

Case 19-34037-pcm12    Doc 189    Filed 10/13/20

arising or accruing on or prior to the date of entry of the Confirmation Order, whether known or unknown, whether under contract, tort, or otherwise, including, but not limited to, any causes of action asserted or that could have been asserted in relation to Boverman's appointment as a receiver for Debtor's assets (the "***Receivership***"), and any claims arising subsequent to the bankruptcy petition related to the Receivership. The foregoing release was intended to be as broad as possible and shall be interpreted accordingly. The foregoing release did not apply to either of the parties' obligations under the Debtor's prior Chapter 12 plan(s) or the Confirmation Order, but such obligations are modified by this Amended Chapter 12 Plan dated October 13, 2020.

- Upon the Effectiveness of this Amended Chapter 12 Plan dated October 13, 2020, Boverman's Proof of Claim shall be deemed amended to be consistent with the terms of this Plan.

18. Debtor has submitted paperwork to Tillamook County Creamery Association ("***TCCA***") to have trustee payments paid directly from TCCA. Debtor shall not withdraw such payment instructions without providing notice of intent to the Trustee and all other parties in interest and allowing 14 days for parties to object to such notice.

/s/ Nicholas J. Henderson  
Nicholas J. Henderson, OSB No. 074027  
Attorney for Debtor

/s/ Eric L. Silva  
Eric L. Silva, Debtor

Page 8 of 8 – Plan Continuation Statements  
Amended Chapter 12 Plan Dated October 13, 2020  
{00330435:10}

In re: Eric L. Silva  
Case No. 19-34037-pcm12

Case 19-34037-pcm12    Doc 189    Filed 10/13/20

Exhibit 1 to
Amended Plan Dated October 13, 2020

## AMENDED AND CONSOLIDATED PROMISSORY NOTE

| Principal | Date of Note | Confirmation Date | Obligation No. | Account | Officer |
|---|---|---|---|---|---|
| $1,512,199.70 | September 21, 2020 | March 25, 2020 | 10001 | E2000320942 | BDTOC |
| References in the boxes above are for lender's use only and do not limit the applicability of this document to any particular loan or item. | | | | | |

**BORROWER AND MAKER:**
Eric L. Silva
26755 Blankenship Road
Beaver, Oregon 97108

**LENDER AND HOLDER:**
KeyBank National Association
1101 Pacific Avenue
Tacoma, Washington 98402

**PURPOSE OF NOTE.** In consideration of money loaned, Borrower previously executed and delivered to Lender various Promissory Notes and other evidence of indebtedness, together with all modifications, extensions, change in terms, renewals and substitutions thereof, including:

(1) Promissory Note dated August 4, 2014, in the original principal amount of $1,310,000.00, evidencing an Indebtedness referred to in Lender's records as Loan No. 18001;

(2) Promissory Note dated January 11, 2016, in the original principal amount of $186,000.00, evidencing an Indebtedness referred to in Lender's records as Loan No. 9;

(3) Promissory Note dated September 14, 2017, in the original principal amount of $125,000.00, evidencing an Indebtedness referred to in Lender's records as Loan No. 10;

(4) Promissory Note dated March 12, 2018, in the original principal amount of $100,000.00, evidencing an Indebtedness referred to in Lender's records as Loan No. 11; and

(5) Promissory Note dated September 3, 2018, in the original principal amount of $110,000.00, evidencing an Indebtedness referred to in Lender's records as Loan No. 201001 (collectively the "Prior Notes").

Borrower is a debtor in a case under Chapter 12 of the Bankruptcy Code (the "Chapter 12 Case") entitled *In re Silva*, Case No. 19-34037-pcm12, filed October 31, 2019 in the United States Bankruptcy Court for the District of Oregon (the "Bankruptcy Court"). On January 9, 2020, Lender filed a proof of claim in the Bankruptcy Case in amount of $1,536,505.74 based on amounts owed under the Prior Notes. Pursuant to 11 U.S.C. § 506(b), Lender is entitled to additional interest, fees and costs on its Proof of Claim.

Borrower filed a Second Amended Chapter 12 Plan with the Bankruptcy Court on February 11, 2020 (the "Chapter 12 Plan"). The Chapter 12 Plan, as modified, was approved by the Bankruptcy Court and made binding pursuant to an Order Confirming Chapter 12 Plan and Resolving Motions entered March 25, 2020 (the "Confirmation Order"). The Confirmation Order provides for restructure of Borrower's obligations and indebtedness to Lender by consolidating the Prior Notes. The purpose and intent of this Note is to effectuate and implement the provisions of the Chapter 12 Plan and Confirmation Order, including modifications thereof, respecting Borrower's indebtedness to Lender.

**This Note amends, restates, consolidates and supersedes Borrower's Prior Notes to Lender, but does not constitute a repayment, satisfaction or novation of any of the Indebtedness evidenced by the Prior Notes.**

**PROMISE TO PAY.** ERIC L. SILVA ("Borrower"), promises to pay to KEYBANK NATIONAL ASSOCIATION ("Lender"), or order, in lawful money of the United States of America, the principal

1

Exhibit 1 - Page 1 of 5
Case 19-34037-pcm12    Doc 189    Filed 10/13/20

amount of One Million Five Hundred Twelve Thousand, One Hundred Ninety-Nine Dollars and Seventy Cents, ($1,512,199.70), together with interest, fees and costs as provided herein.

**PAYMENT.** Under the Chapter 12 Plan and Confirmation Order, the Chapter 12 trustee shall act as disbursing agent and make the payments to Lender as provided herein. Borrower shall, on or before the fifteenth day of each month, deposit sufficient funds with the Chapter 12 trustee, as to enable the trustee, commencing September 25, 2020, and on the same date each month thereafter until the Maturity Date, to make regular monthly payments to Lender at such place as Lender may designate in writing from time to time, in accordance with the following payment schedule:

(1) September 25, 2020 through and including December 25, 2020: regular equal monthly payments of principal and interest in the amount of $9,500.00 each month;

(2) January 25, 2021 through and including September 25, 2022: regular equal monthly payments of principal and interest in the amount of $12,500.00 each month;

(3) October 25, 2022 through and including November 25, 2023: regular equal monthly payments of principal and interest in the amount of $45,000.00;

(4) December 25, 2023 through and including December 25, 2024: regular equal monthly payments of principal and interest in the amount of $55,000.00; and

(5) January 25, 2025: one irregular payment of all remaining principal, accrued interest and any unpaid fees and charges.

**INTEREST RATE.** This Note shall bear interest at the rate of 6.50% per annum, fixed (the "Interest Rate").

**MATURITY DATE.** The Maturity Date of this Note shall be January 25, 2025, at which all remaining principal, accrued interest and outstanding fees, costs and other charges shall be due and payable.

**INTEREST AFTER DEFAULT.** Upon default, including the failure to pay on final maturity, and after the expiration of any applicable cure period, Lender may charge interest on the unpaid balance of this Note from and after the date of the occurrence of an Event of Default at lesser of (a) the Interest Rate (as defined above) plus three percent (3.00%) per annum, or (b) the maximum lawful rate under applicable law. (NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. It is expressly stipulated and agreed to be the intent of Borrower and Lender at all times to comply with applicable law governing the maximum rate or amount of interest payable on this Note. If the applicable law is interpreted by a court of competent jurisdiction so as to render usurious, illegal or unenforceable any amount called for under this Note, then it is Borrower's and Lender's express intent that all excess amounts be credited to the principal balance (or if this Note would thereby be paid in full, any excess amount be refunded to Borrower), and the provisions of this Note shall immediately be deemed reformed without the necessity of the execution of any new documents, so as to comply with the applicable law, but to permit recovery of the fullest amount otherwise called for by this Note.)

**COMPUTATION OF INTEREST.** Interest on the outstanding principal balance of this Note shall be computed on the basis of a "360-day year for the actual number of days elapsed" (such phrase shall mean that in computing interest for the subject period, the interest rate shall be calculated by dividing the annual interest rate by 360 to determine the daily rate, and this daily rate is applied to the outstanding balance to determine each day's interest). Interest shall accrue until the date of actual receipt of payment by Lender.

**SECURITY.** All real and personal property previously granted to Lender to secure Borrower's obligations and indebtedness under the Prior Notes shall continue to secure the indebtedness evidenced by this Note.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make regular annual payments. Borrower agrees not to send Lender payments marked "paid in full," "without recourse," or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender.

**COMMUNICATIONS.** All written communications concerning this Note must be mailed or hand-delivered to Lender at the following address (or at such other address as Lender may designate in writing): KeyBank National Association, Attn: Brent Thompson, Specialized Finance, 1101 Pacific Avenue, Tacoma, Washington 98402.

**LATE CHARGE.** If a payment is ten (10) or more days late, Borrower will be charged a late payment charge equal to **5.000% of the regularly scheduled payment or $100.00, whichever is greater.** Borrower agrees that such late payment charge is not a charge for the use of money but is imposed to compensate Lender for some of the administrative services, costs and losses associated with any delinquency or default under the Note. Borrower agrees that the late charge is a reasonable estimate of the loss and expense that may be incurred by Lender due to Borrower's failure to make timely payments. Notwithstanding the foregoing, Borrower shall not be subject to a late payment charge if Borrower has timely paid the Chapter 12 trustee the sums necessary to make the payment to Lender and the late payment is the result of delay by the trustee or other circumstances beyond Borrower's control.

**DISHONORED ITEM FEE**. Borrower will pay a fee to Lender of $25.00 if Borrower makes a payment and the check or preauthorized charge with which Borrower pays Lender is later dishonored.

**REPRESENTATIONS OF BORROWER.** Borrower hereby represents and warrants to the Holder that:

**Authorization.** All action on the part of Borrower necessary for the authorization, execution and delivery of this Note and the performance of all obligations of Borrower hereunder, has been duly authorized.

**Governmental Consents.** No consent, approval, order or authorization of, or registration, qualification, designation, declaration or filing with, or notification to, any federal, state or local governmental authority on the part of the Borrower is required in connection with the consummation of the transactions contemplated by this Note.

**Compliance with Other Instruments.** Borrower is not in violation or default of any material instrument, judgment, order, writ, decree or contract to which it is a party or by which it is bound, including the Chapter 12 Plan and the Conformation Order, or of any provision of federal or state statute, rule or regulation applicable to the Borrower. The execution, delivery and performance of this Note and the consummation of the transactions contemplated hereby will not result in any such violation or be in conflict with or constitute, with or without the passage of time and giving of notice, either a default under any such provision, instrument, judgment, order, writ, decree or contract or an event which results in the creation of any lien, charge or encumbrance upon any assets of Borrower.

**DEFAULT.** Each of the following shall constitute an event of default ("default" or "Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or any provision of the Chapter 12 Plan or the Confirmation Order

affecting Lender or Lender's rights, or to comply with or to perform any term, obligation, covenant or condition contained in any subsequent agreement between Lender and Borrower.

**Default in Favor of Third Parties.**  Borrower defaults under the Chapter 12 Plan or the Confirmation Order, or any loan, extension of credit, security agreement, purchase or sales agreement or other agreement in favor of any other creditor or person that may materially affect any of Lender's Collateral or may reasonably be expected to affect Borrower's ability to repay this Note or perform Borrower's obligations under this Note.

**Creditor Attachment, Garnishment, Execution, Foreclosure or Forfeiture Proceedings.** Commencement of attachment or execution proceedings, including without limitation garnishment, attachment or replevin, foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental unit or political subdivision against any collateral securing the loan. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Adverse Change.**  A material adverse change, including any event, occurrence, change in facts, conditions or other change in circumstance which has or is reasonably expected to have a material adverse effect on Borrower's business, results of operations, assets, liabilities or financial condition, including diminution in the value of Borrower's property or business assets, as determined from the perspective of a reasonably prudent lender in Lender's position, occurs following the execution and delivery of this Note, or Lender otherwise believes in good faith that the prospect of payment or performance of this Note is impaired.

**CURE PROVISIONS.** If Borrower fails to make any payment when due, Borrower shall have the right to cure the default within thirty (30) days after Lender sends written notice to Borrower demanding cure.  If Borrower fails to comply with or to perform any other obligation to Lender, including financial disclosures and reporting requirements provided in the Loan Documents or the Confirmation Order, such Event of Default may be cured if Borrower, after receiving written notice from Lender demanding cure of such default cures the default within forty-five (45) days.

**LENDER'S RIGHTS.**  If there shall occur any Event of Default and Borrower fails to cure such default as provided herein, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.  Lender may also, if permitted under applicable law, charge interest on the unpaid balance of this Note at the Default Interest Rate.

**ATTORNEYS' FEES; EXPENSES.**  Lender may hire or engage an attorney to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, reasonable attorneys' fees and other related legal expenses, whether or not there is a lawsuit, including without limitation filing fees, service of process fees, expert witness fees, mileage fees, copy costs, long distance telephone tolls, expenses relating to bankruptcy proceedings, and appeals. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.**  TO THE FULLEST EXTENT PERMITTED BY LAW, LENDER AND BORROWER HEREBY WAIVE THE RIGHT TO TRIAL BY JURY IN ANY ACTION, LITIGATION OR PROCEEDING IN ANY COURT WITH RESPECT TO, IN CONNECTION WITH, FOUNDED UPON OR ARISING OUT OF THIS NOTE, ANY OTHER LOAN DOCUMENTS, OR ANY OTHER AGREEMENT, INSTRUMENT OR DOCUMENT DELIVERED IN CONNECTION WITH THIS NOTE, OR INVOLVING THE VALIDITY, INTERPRETATION,

COLLECTION OR ENFORCEMENT THEREOF, INCLUDING ANY CLAIM, DEFENSE, COUNTERCLAIM, DEMAND, COUNTER DEMAND OR OTHER DISPUTES OF EVERY NATURE WHATSOEVER ARISING BETWEEN BORROWER AND LENDER.

**GOVERNING LAW; SUBMISSION TO JURISDICTION.** This Note shall be governed by, and construed, interpreted and enforced in accordance with, the laws of the State of Oregon without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of Oregon. Borrower hereby submits to personal jurisdiction in said State for the enforcement of Borrower's obligations hereunder.

**PRIOR NOTES.** This Note consolidates, amends and restates in their entirety the obligations and indebtedness of Borrower to Lender arising under Prior Notes relating to certain commercial loans referred to as Loan No. 18001, Loan No. 201001, Loan No. 9, Loan No. 10, and Loan No. 11, as more particularly described in Lender's proof of claim in the Chapter 12 Case, but is not a repayment, satisfaction or novation of the indebtedness evidenced by the Prior Notes.

**NO WAIVER BY LENDER.** Neither the waiver by Lender of a breach of or a default by Borrower of any of the provisions of this Note, nor the failure by Lender, on one or more occasions, to enforce any of the provisions of this Note or to exercise any right or privilege hereunder, shall be construed as a waiver of any other breach or default of a similar nature, or as a waiver of any of such provisions, rights or privileges hereunder. No failure or delay on the part of Lender in the exercise of any right hereunder shall impair such right or be construed to be a waiver of, or acquiescence in, any breach of any term, provision covenant or agreement herein, nor shall any single or partial exercise of any such right preclude other or further exercise thereof or of any other right.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower and upon Borrower's heirs, personal representatives and successors, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forego enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may modify, amend, renew or extend (repeatedly and for any length of time) this Note or release any party or Guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone.

**PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE DEFAULT INTEREST RATE PROVISIONS. BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE. BORROWER AGREES TO THE TERMS OF THIS NOTE.**

IN WITNESS WHEREOF, Borrower, intending to be legally bound, has duly executed this Note as of the day and year first above written.

**BORROWER:**
**ERIC L. SILVA**

_____
**Eric L. Silva**